15-1403-cv
*Crawford v. Franklin Credit Mgmt. Corp. et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2015
No. 15-1403-cv

LINDA D. CRAWFORD,
*Plaintiff-Counter-Defendant-Appellant,*

*v.*

TRIBECA LENDING CORP., FRANKLIN CREDIT MANAGEMENT CORP.,
*Defendants-Counter-Claimants-Cross-Claimants-Appellees,*

AND LENDERS FIRST CHOICE AGENCY, INC.,
*Defendant-Cross-Defendant-Appellee.*

————

Appeal from the United States District Court
for the Southern District of New York

————

SUBMITTED: FEBRUARY 29, 2016
DECIDED: MARCH 8, 2016

————

Before: CABRANES, PARKER, and LYNCH, *Circuit Judges.*

————

Plaintiff-appellant Linda D. Crawford appeals an April 22, 2015 judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).  She argues that the District Court erred in denying her post-verdict motion for judgment as a matter of law or, in the alternative, for a new trial.  She also challenges the admission of certain items of evidence over objections predicated on the bar against propensity evidence, *see* Fed. R. Evid. 404(a), the requirement of authentication, *see* Fed. R. Evid. 901, the rule against hearsay, *see* Fed. R. Evid. 802, and the so-called "best evidence" rule, *see* Fed. R. Evid. 1002.  Finding no error, we **AFFIRM**.

————

Krishnan S. Chittur, Chittur & Associates, P.C., Ossining, NY, *for Plaintiff-Appellant.*

Martin C. Bryce, Jr., Ballard Spahr LLP, Philadelphia, PA, *for Defendants-Appellees.*

————

PER CURIAM :

Plaintiff-appellant Linda D. Crawford appeals an April 22, 2015 judgment of the United States District Court for the Southern District of New York (Kimba M. Wood, *Judge*).  She argues that the District Court erred in denying her post-verdict motion for judgment as a matter of law or, in the alternative, for a new trial.  She also challenges the admission of certain items of evidence over objections predicated on the bar against propensity evidence, *see*

Fed. R. Evid. 404(a), the requirement of authentication, *see* Fed. R. Evid. 901, the rule against hearsay, *see* Fed. R. Evid. 802, and the so-called "best evidence" rule, *see* Fed. R. Evid. 1002. Finding no error, we **AFFIRM**.

## BACKGROUND

Crawford brought this suit against defendants-appellants Tribeca Lending Corp. ("Tribeca"), Franklin Credit Management Corp. ("Franklin Credit"), and Lenders First Choice Agency, Inc. ("Lenders First") (jointly, "defendants") alleging common-law fraud and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, in connection with a mortgage loan.[1] According to Crawford, defendants contacted her in November 2004 to offer her a loan that would enable her to satisfy two existing mortgages on her home (then in foreclosure). Crawford was interested, and when defendants asked her to provide them with samples of her signature, she obliged: she met with defendants' representative at John F. Kennedy International Airport ("JFK") on December 11, 2004, and signed several blank sheets of paper. Crawford contends that she never agreed to the loan. Defendants, however, armed with samples of Crawford's signature, forged a host of documents and thereby

---

[1] "TILA's declared purpose is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit . . . .'" *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011) (quoting 15 U.S.C. § 1601(a)). Crawford's complaint alleged that defendants failed to make a number of disclosures that TILA requires.

manufactured a $504,000 mortgage on Crawford's house. They later foreclosed.

Defendants dispute this account. At trial, they offered evidence tending to show that, during the meeting at JFK, Crawford signed not blank sheets of paper but actual loan documents. The jury sided with defendants and returned a verdict in their favor on both the fraud and TILA claims. Crawford moved for judgment as a matter of law under Federal Rule of Civil Procedure 50 or, in the alternative, for a new trial under Federal Rule of Civil Procedure 59. The District Court denied the motion. *Crawford v. Franklin Credit Mgmt. Corp.*, No. 08 Civ. 6293 (KMW), 2015 WL 1378882 (S.D.N.Y. Mar. 26, 2015). On appeal, Crawford challenges that denial, as well as several evidentiary rulings made during the course of the trial.

## DISCUSSION

### I. The District Court's Evidentiary Rulings

We begin with Crawford's evidentiary challenges, reviewing the District Court's rulings for "abuse of discretion." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 34 (2d Cir. 2015). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Id.* (internal quotation marks omitted).

5

## A. Testimony of Anthony Decarolis

Crawford first takes issue with testimony offered by Anthony Decarolis. Decarolis, a lawyer, told the jury that he had met with Crawford at JFK on December 11, 2004 and that he had not asked her to sign any blank sheets of paper. He was also permitted to testify that he had handled "more than a thousand" similar loan signings during his career, "[s]pecifically in [ ] 2004-2005," when many homeowners were refinancing; that during that time period, it had not been "uncommon to have 10 [signings] on the schedule a week"; that his "[t]ypical[ ]" practice when conducting a signing was to hand documents to the borrower, one by one, and briefly explain each; and that, though he could not recall all the particulars of his meeting with Crawford, he would not have deviated meaningfully from his "usual procedure" during the transaction. Defs.' App. 7-9. Crawford argues that Decarolis's testimony about his typical practice, offered to prove that he had acted in conformity with that practice on December 11, 2004, constituted propensity evidence barred by Federal Rule of Evidence 404(a).

We disagree. Although Rule 404(a) deems inadmissible "[e]vidence of a person's character or character trait . . . [offered] to prove that on a particular occasion the person acted in accordance with the character or trait," Federal Rule of Evidence 406 provides that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Character and habit, though "close akin," are not identical

concepts. Fed. R. Evid. 406 advisory committee's note to 1972 proposed rule (internal quotation marks omitted). Character may be thought of as "a generalized description of one's disposition," while habit "is more specific": "[i]t describes one's regular response to a repeated specific situation." *Id.* (internal quotation marks omitted). Consistent with these principles, we held in *Carrion v. Smith* that Rule 406 permitted testimony by a lawyer that it was his "usual practice" to discuss with clients their sentencing exposure should they go to trial, offered to prove that the lawyer had discussed that topic with a particular client on a particular occasion. *Carrion v. Smith*, 549 F.3d 583, 586-87, 590 (2d Cir. 2008); *see also United States v. Arredondo*, 349 F.3d 310, 315-16 (6th Cir. 2003) ("Plachta testified that he always passed on plea offers to clients. He had already represented five to fifteen criminal defendants in federal court at the time of Arredondo's trial, and had undertaken more representations since then. In light of Plachta's experience, his habit testimony was admissible under Fed. R. Evid. 406 to show that he acted in conformity with that habit in this case.").

We see no meaningful difference between *Carrion* and this case. Decarolis testified that he had conducted more than a thousand signings like Crawford's—many of them in 2004 and 2005, when he was sometimes conducting ten a week—and that, during these transactions, he always showed the borrower the documents to be signed, explaining their significance as he went. This practice constitutes the sort of "regular response to a repeated specific situation" contemplated by Rule 406. Fed. R. Evid. 406 advisory

committee's note to 1972 proposed rule (internal quotation marks omitted).  The District Court thus acted within its discretion in admitting Decarolis's testimony.

## B. The Loan Documents

Crawford's next evidentiary challenge concerns the loan documents themselves.  The District Court admitted 34 such documents into evidence.  Only three—the mortgage itself, the adjustable rate note, and the adjustable rate rider—were originals (that is, actually signed in ink).  The others were photocopies. Crawford argues that, for several reasons, the photocopied documents were inadmissible.  We are not convinced.

Crawford first contends that the loan documents should have been excluded as hearsay under Federal Rule of Evidence 802.  This argument is easily rejected.  The rule against hearsay bars introduction of an out-of-court statement only if it is offered to prove the truth of what it asserts.  Fed. R. Evid. 801(c), 802. Defendants offered the loan documents not to demonstrate the truth of any assertions contained therein, but for either of two permissible purposes.  The first was to show that Crawford entered into the loan agreement.  This point was susceptible of proof without reference to the truth of any assertions in the documents because the "statements" introduced (i.e., the information in the documents, combined with Crawford's signature) carried independent legal force: they constituted a contract.  *See United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) (statements that in themselves affect the

legal rights of parties are not hearsay). Defendants' second purpose was simply to show that Crawford had received the disclosures that TILA mandates. The presence of Crawford's signature on the pages containing those disclosures achieved that end quite apart from the truth of what the documents asserted. *See George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) (demonstrating notice is a permissible nonhearsay purpose).

Resisting this conclusion, Crawford argues that the loan documents cannot accomplish these nonhearsay purposes unless they are what they purport to be—i.e., loan documents bearing Crawford's true signature—and are therefore inadmissible hearsay because there is no evidence (according to Crawford) that she actually signed the agreement. But this is not a hearsay objection. Whether Crawford signed the papers or not, defendants did not offer them to prove the truth of whatever assertions they might contain. The rule against hearsay has nothing to say about them.

Crawford's argument in fact concerns authentication, not hearsay. Federal Rule of Evidence 901(a) requires that an item of evidence be "authenticated" through introduction of evidence sufficient to warrant a finding that the item is what the proponent says it is. "Rule 901 does not erect a particularly high hurdle" and is "satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 37-38 (2d Cir. 2004) (internal quotation marks omitted). Defendants met this standard with respect to the photocopied loan documents. They introduced

testimony from several witnesses tending to demonstrate that the documents were what defendants claimed they were (that is, true copies of originals signed by Crawford, rather than fakes). Melissa Olivera, a Franklin Credit employee, testified that she had seen the original loan documents and that the photocopies faithfully reflected the originals. *See* Fed. R. Evid. 901(b)(1) (an item of evidence may be authenticated through testimony of a witness with knowledge). Defendants' handwriting expert, Andrew Sulner, testified that, in his opinion, the signatures on the documents were Crawford's, and that the signatures did not appear to have been forged mechanically or added to the documents digitally. *See* Fed. R. Evid. 901(b)(3) (an item of evidence may be authenticated through "[a] comparison with an authenticated specimen by an expert witness"). And Decarolis, as discussed, testified that he had met with Crawford to close a refinancing transaction and had no reason to think she had not signed all of the relevant paperwork. This evidence easily cleared the hurdle of Rule 901(a).

Finally, we reject Crawford's argument that admission of the photocopies violated the so-called "best evidence" rule. Federal Rule of Evidence 1002 provides that if a party wishes to prove the content of a writing, it generally must do so by introducing the original. But this command is subject to a handful of exceptions. As relevant here, an original is not required, and secondary evidence may be admitted to prove the content of a writing, if "all the originals are lost or destroyed, and not by the proponent acting in

bad faith." Fed. R. Evid. 1004(a).[2] It is for the trial court to determine whether these factual predicates—which the proponent must prove by a preponderance of the evidence—have been satisfied. *See* Fed. R. Evid. 104(a), 1008; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993).

The District Court did not "abuse its discretion" in concluding that the original loan documents had been lost, and not by defendants' bad faith. As has been discussed, defendants presented evidence from Olivera, Sulner, and Decarolis indicating that originals had once existed (a necessary condition of showing that they went missing, and a matter of dispute in this case). Testimony

---

[2] We pause to note an oddity. The District Court determined that the copies were admissible under Rule 1004(a) without considering whether they might be admitted under Federal Rule of Evidence 1003. It is not perfectly clear why that is so: the photocopies appear to qualify as "duplicates" under Federal Rule of Evidence 1001(e), and Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."

It has been suggested in some quarters that if a duplicate is inadmissible under Rule 1003 because of a genuine question about the original's authenticity, it should not be admitted through the backdoor of Rule 1004. *See, e.g.*, Charles Alan Wright & Victor James Gold, 31 Federal Practice and Procedure: Evidence § 8003 (1st ed. 2000). If this rule is sound (an issue on which we intimate no view), its corollary should prevent a party from evading the test of Rule 1003 by seeking in the first instance to admit a duplicate through Rule 1004—as apparently occurred in this case. But we need not consider this question. Crawford did not argue below that Rule 1003 bore at all on the admissibility of the photocopies, and she does not so argue here. We will therefore assume that the photocopies' admissibility may properly be considered under the framework of Rule 1004.

from multiple sources demonstrated that the originals were no longer in defendants' possession, *see* App. 134, 253, and Olivera testified that they had been sent to prior counsel in 2009 and never seen again, Defs.' App. 27. Prior counsel, for its part, had informed Crawford in 2009 that it had in its possession a few original documents from Crawford's loan file (the originals later introduced into evidence) but said nothing about the rest. App. 135. Though it is true, as Crawford stresses, that defendants provided the District Court with little information concerning the extent of their search for the originals, we cannot say that the Court "abused its discretion" in determining that the documents, absent from defendants' files and evidently from prior counsel's, had been lost. Nor was the Court unjustified in concluding that defendants had not acted in bad faith. It considered and found wanting Crawford's arguments regarding irregularities in the loan file and purported inconsistencies in defendants' testimony. It acted well within its discretion in so doing.

## II. Crawford's Post-Trial Motions

We now turn to Crawford's Rule 50 and Rule 59 motions. Crawford failed to seek judgment as a matter of law under Rule 50(a) before the case was submitted to the jury; thus, as the District Court correctly ruled, her motion could properly have been granted only if necessary "to prevent manifest injustice." *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012). In reviewing the District Court's denial, we must "give deference to all credibility determinations and reasonable inferences of the jury, and may not

weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir. 2010).

We have no trouble concluding that Crawford's Rule 50 arguments fail, and see no reason to rehash the preceding discussion of the relevant evidence. Suffice it to say that the testimony from Olivera, Sulner, and Decarolis, together with the loan documents, was more than adequate to warrant the jury in finding for defendants on the case's central issue—that is, whether Crawford had actually signed a loan agreement at JFK. Crawford's arguments to the contrary are jury arguments, and the jury was at liberty to reject them.

Nor do we find any error in the District Court's denial of Crawford's Rule 59 motion for a new trial, a denial we review for "abuse of discretion." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005). A district court may grant a Rule 59 motion—even if some evidence supports the verdict—if the court determines, "in its independent judgment, [that] the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice." *Id.* (second alteration in original) (internal quotation marks omitted). But a trial judge should not be quick to revisit a jury's credibility determinations, and must proceed "with caution and great restraint" when asked to do so. *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012).

In this case, Judge Wood properly heeded that admonition. As her opinion recognizes, "[t]he jury's verdict suggests that the jury found Defendants' witnesses . . . sufficiently credible, or Crawford's witnesses sufficiently incredible, to warrant a verdict in Defendants' favor." *Crawford*, 2015 WL 1378882, at *8. Judge Wood found nothing in the record to warrant upsetting that verdict. Neither do we. Accordingly, we conclude that the District Court did not err in denying Crawford's motion for a new trial.

## CONCLUSION

In sum, we find no error in the District Court's denial of Crawford's motion for judgment as a matter of law, and we conclude that the Court acted within its discretion in denying Crawford's motion for a new trial and rejecting her evidentiary challenges. We thus **AFFIRM** the April 22, 2015 judgment of the District Court.